**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
BLUE BUS TOURS, LLC,

                                     Plaintiff,

       v.

JOHN GORE, HBC GROUP LLC, DEALER
CORP., U.S. FLEET SERVICES CORP., HIGER
USA, HIGER BUS COMPANY LIMITED d/b/a
HIGER USA, and STALLION BUS INDUSTRIES,
LLC,

                                 Defendants.
---------------------------------------------------------X

                             **REPORT AND**
                             **RECOMMENDATION**

                          20-cv-5879 (DG) (LGD)

**LEE G. DUNST**, Magistrate Judge:

      Plaintiff Blue Bus Tours, LLC ("Plaintiff," or "Blue Bus") is a San Francisco-based

limited liability company that operates sightseeing bus tours.  Defendant John Gore is the

principal and sole shareholder of several bus manufacturing and distribution companies,

including Defendants HBC Group LLC and its d/b/a Higer USA, Dealer Corp., U.S. Fleet

Services Corp., and Stallion Bus Industries LLC.  Also named in this suit is Defendant Higer Bus

Company Limited, a Chinese company that manufactures so-called "Higer" brand buses.  Blue

Bus brought this case seeking to recover from Defendants for alleged breaches of contract, fraud,

and conversion stemming from three agreements for the purchase of four buses and a fourth

settlement agreement that—according to Blue Bus—was to refund money paid under those

deals.  Electronic Case Filing ("ECF") No. 7 ("Amended Compl."), ¶¶ 40-73.

      Now before the Court are cross-motions for summary judgment under Federal Rule of

Civil Procedure 56.  Plaintiff's motion ostensibly seeks partial summary judgment only on its

contract-based claims (ECF No. 60), while Defendants' motion seeks dismissal of all claims

(ECF No. 62).  The cross-motions are before the undersigned on referral by District Judge Diane Gujarati.  Electronic Order, Feb. 20, 2025.

For the reasons set forth below, the undersigned recommends that the Court deny Plaintiff's partial motion for summary judgment and grant Defendants' motion in its entirety.

## I.    BACKGROUND

### A.    Factual Background[1]

#### 1.    Parties

Blue Bus is a California LLC that operates sightseeing bus tours in San Francisco. Pl. 56.1 Reply, ¶¶ 1-2; ECF No. 60-12 ("Casanova Decl."), ¶¶ 3-4.

John Gore is principal and sole owner of several Defendant bus manufacturing and distribution companies—specifically, (1) HBC Group LLC ("HBC Group"), which does business as (2) Higer USA,[2] (3) Dealer Corp., (4) U.S. Fleet Services Corp., and (5) Stallion Bus Industries LLC.  Pl. 56.1 Reply, ¶¶ 3-11.  Also named as a Defendant is Higer Bus Company Limited ("Higer China")—a Shanghai, China-based manufacturer of so-called "Higer" brand buses.  *See* ECF No. 60-8 ("Gore Dep.") at 59:9-11.  Unlike the other Defendants (and not to be

---

[1] The following facts are undisputed unless otherwise noted.  As Plaintiff and Defendants both move for summary judgment, they have both filed—scattered across the docket—Local Rule 56.1 statements of undisputed material facts, corresponding counterstatements, and replies.  ECF No. 60 ("Pl. 56.1"); ECF No. 63-1 ("Defs. Counterstatement"); ECF No. 60-18 ("Pl. 56.1 Reply"); ECF No. 62-10 ("Defs. 56.1"); ECF No. 61 ("Pl. Counterstatement"); ECF No. 64-1 ("Defs. 56.1 Reply").  In the undersigned's opinion, these submissions are of limited use.  Local Rule 56.1's purpose is "to aid the courts in deciding summary judgment motions by quickly identifying disputed material facts."  *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009).  Here, however, the parties' submissions defeat that purpose.  Plaintiff, for example, contests nearly every asserted fact, even plain contractual terms.  *See, e.g.*, Pl. Counterstatement, ¶¶ 2, 4, 5 (denying as "moot," "irrelevant," and "lacking context" verbatim contract language).  The parties' refusal to narrow disputes and insistence on contesting even obvious facts has made identifying genuinely undisputed facts needlessly burdensome.  The Court will disregard those portions of the 56.1 statements "that contain conclusory, argumentative, irrelevant, speculative, or unsupported assertions."  *Dikambi v. City Univ. of N.Y.*, 690 F. Supp. 3d 293, 302 (S.D.N.Y. 2023).

[2] Though Blue Bus names HBC Group and Higer USA separately, Higer USA is not a separate legal entity from and is merely HBC Group's "doing business as" moniker.  Pl. 56.1 Reply, ¶¶ 4, 8.  Therefore, for clarity, where the agreements or other documents refer to "Higer USA" as a party, the Court treats those references as to "HBC Group"—*i.e.*, the proper legal entity.  Ultimately, because Higer USA lacks capacity to be sued, it should be dismissed from this case.  *See* Section III.A, below.

confused with HBC Group or its d/b/a Higer USA),[3] Higer China is unaffiliated with Gore. *See id.* at 64:3-17. Higer China does not employ Gore, and he lacks any ownership interest in it. *See id.* (Gore testifying that he never "became a salaried employee or commissioned salesperson for [Higer China]," and was "never an independent contractor for [Higer China]"). Gore's companies merely maintained a business relationship with Higer China by distributing Higer buses in the United States. *See id.* (Gore testifying that his companies merely "had a relationship with [Higer China]"); ECF No. 60-15 ("Gore 2024 Dep.") at 180:16-19 (referencing "distributorship agreement" between Higer China and HBC Group).

2. <u>January 22, 2018 Higer Contract (the "Higer Contract")</u>

a) *Terms*

On January 22, 2018, Blue Bus entered into a purchase agreement, under which HBC Group agreed to sell, and Blue Bus agreed to purchase, two open-top double-deck Higer coach buses at a price of $399,000 per bus, for a total purchase price of $798,000. Pl. Counterstatement, ¶ 1; *see also* ECF No. 60-4 ("Higer Contract"), §§ 2.1, 5.1. The buses were to be "manufactured in China, and assembled in part from components built in the United States." Pl. 56.1 Reply, ¶ 34.

The Higer Contract designates HBC Group as the "Seller," and Blue Bus as the "Buyer." Higer Contract, at p. 1. The signature page includes one signature under the header "Seller": Jonathan Birdsey on behalf of HBC Group, and one signature under the header "Buyer": Nacho Casanova Hausmann on behalf of Blue Bus. *Id.* at p. 6-7.

---

[3] To further distinguish among the multiple Defendants, the Court refers to Higer Bus Company Limited (which is an unaffiliated Chinese bus manufacturer) as "Higer China." This distinction is critical because Blue Bus consistently lumps in Higer China with allegations concerning Gore's companies.

The contract requires HBC Group to "make all necessary arrangements" to deliver the vehicles to Blue Bus, with delivery "estimated June 2018"[4] in San Francisco.  *Id.* §§ 3.1-3.2. Attached to the agreement is a "Time Table" containing a "Production & Delivery Schedule." *Id.* at "Time Table."[5]  The "Production & Delivery Schedule" provides "current projections" (as of January 22, 2018) for manufacture and delivery of the vehicles, including a projected final delivery of "June 2018 Week 5- to July Week 1: Delivery to customer."  *Id.*  The contract further requires HBC Group to notify Blue Bus of "the anticipated arrival date" of the vehicles "by giving at least three weeks' prior written notice."  *Id.* § 4.1.

Upon receipt, Blue Bus must, "[w]ithin 15 days," test the vehicles and certify compliance with the specifications set forth in "Appendix A + B."  *Id.* § 4.1-4.2.  The agreement provides Blue Bus with certain remedies should it find the vehicles nonconforming.  *Id.*

The payment schedule requires Blue Bus to pay 25% of the contract price upon signing the agreement, and the balance upon delivery.  *Id.* § 5.1.

The Higer Contract also contains a "Force Majeure" clause providing that neither Blue Bus nor HBC Group shall "be liable for failure or delay in performing" "where such failure or delay is occasioned by" intervening factors, including "supplier delays."  *Id.* § 10.

> b)    *Formation*

The parties agree that the Higer Contract bound at least HBC Group and Blue Bus.  Pl. 56.1 Reply, ¶ 28.  But as to the remaining Defendants, they dispute the contract's scope.

---

[4] Blue Bus states that the Higer Contract provided for delivery "by the end of June 2018."  Pl. 56.1 Reply, ¶ 30.  That representation conflicts with the agreement's unambiguous language ("estimated June 2018").  Higer Contract, §§ 3.1-3.2.

[5] Incredibly, neither party filed (in a case almost entirely about contractual interpretation) a version of the Higer Contract that includes this separate "Time Table" or any of the other attached appendices.  As a result, on July 9, 2025, the Court ordered the parties to deliver to chambers "hard courtesy copies" of a "complete copy of the Higer USA Contract, including the missing appendices."  Electronic Order, July 9, 2025.

Blue Bus's position is that all Defendants are bound. In support, Blue Bus states that Gore "interchangeably communicated" with Blue Bus on behalf of each of Defendant, citing Defendants' purported admission in their Answer (ECF No. 22, ¶ 11). *Id.* ¶ 14.

Defendants, on the other hand, contend that a contract formed only between HBC Group and Blue Bus. *Id.* ¶ 28. Defendants state that Gore generally "acted on behalf of" HBC Group, Dealer Corp., U.S. Fleet Services Corp., and Stallion Bus Industries LLC in the "negotiation, execution, and performance of contracts of sale for the purchase of passenger motorcoaches," but not under the Higer Contract. *Id.* ¶ 14. Moreover, Defendants deny that Gore ever acted (or could act) on behalf of Higer China. *Id.* Defendants do admit, however, that Gore "used emails from U.S. Fleet Services Corp., [HBC Group], and Stallion Bus Industries LLC" in connection with the Higer Contract. *Id.* ¶ 15.

> ### c)    *Performance*

Five days after HBC Group and Blue Bus executed the Higer Contract, Gore directed Blue Bus to wire its $200,000 deposit to Dealer Corp. *Id.* ¶ 21; *see also* ECF No. 60-13 (January 2018 bank statement reflecting Blue Bus's $200,000 wire transfer to Dealer Corp). Gore sent $100,000 of that $200,000 to Higer China to fulfill the order. Gore 2024 Dep. at 58:6-18.

In the months leading up to the estimated June 2018 delivery of the buses, Gore informed Blue Bus that delivery would not take place by the estimated time. ECF No. 60-11 ("Casanova Dep.") at 121:9-14. Gore notified Blue Bus that HBC Group's inability to deliver the buses on time was caused by a third-party supplier delay. Gore Dep. at 107:18-108:1; Casanova Dep. at 110:7-12; 22-24 ("Q. Was there a supplier delay in this case? A. We were -- on several conversations with Mr. Gore, we were informed that there were some delays on the supply side"; "Q. . . . those delays, as you described them, were supplier delays? A. Yes."); *id.* at 111:21-112:2

("Q. . . . the delays that arose were, you learned were from a supplier, correct? A. Yes.").[6] According to Gore, a third-party supplier of the buses' fuel tanks caused the delay by building the fuel tanks to incorrect specifications. Gore Dep. at 108:2-15. That delay was material: Blue Bus needed the two buses by the end of June 2018 or it would be "left without the buses it required to service the clients that it had for the summer 2018 tourism season." Casanova Decl., ¶ 15. Consequently, "[w]hen it became clear" to Blue Bus that HBC Group could not deliver the two buses "by the time they were needed at the end of June 2018," Blue Bus "asked Mr. Gore to return the $200,000 in deposits that Blue Bus had paid" for them. *Id.* ¶ 16.

Blue Bus never took possession of the two Higer buses. Pl. 56.1 Reply, ¶ 53. The buses remained in China while HBC Group tried to sell them to a substitute buyer. *Id.* ¶ 36.

       1.    <u>June/July 2018 Settlement Negotiations</u>

       *a)*    *Terms*

After Blue Bus asked for a refund, the parties reduced their intent to cancel the Higer Contract into draft writing in a so-called "Bus Purchase Cancellation and Settlement Agreement." ECF No. 60-5 ("Settlement Agreement"). The Settlement Agreement, dated June 22, 2018, designates the parties as "Blue Bus Tours" and "the Higer USA, HBC Group LLC" "for themselves, Dealer Corp, their officers, directors, executives, managers, employees, agents, attorneys, divisions, related and subsidiary entities, affiliates, successors, and assigns." *Id.* at p. 1. The signature page includes an *unsigned* blank space under the header HBC Group, LLC, with Gore's name appearing in typeface below the unsigned signature line. *Id.* at p. 3. The page includes one signature under the header Blue Bus Tours, LLC: Ignacio Casanova. *Id.*

---

[6] Blue Bus denies that there was any delay because the Higer buses "were never delivered and there thus was no 'delay.'" Pl. Counterstatement, ¶ 7. That objection is nonresponsive. Casanova explicitly admitted that Gore informed him of a supplier delay.

The agreement references the $200,000 that Blue Bus paid under the Higer Contract, states that Blue Bus "now wishes to cancel the order and receive a refund" and specifies two scenarios under which HBC Group is "agreeable to refunding" Blue Bus: (1) if HBC Group is able to sell the two Higer buses to a new purchaser, they "shall make payment" to Blue Bus "upon receipt of clear funds and delivery to the new purchaser," and (2) if HBC Group fails "to sell the buses by Feb 1, 2019," it "will refund" Blue Bus anyway. *Id.* at p. 1.

b)      *Formation*

The parties dispute whether the Settlement Agreement formed a contract.

Defendants contend that they never entered into the Settlement Agreement. None of the versions of the draft agreement, Defendants say, were entered into by both parties. Pl. 56.1 Reply, ¶¶ 44-45. Instead, the agreement went through several rounds of edits, and Gore intentionally did not sign it while edits were ongoing. *Id.* In fact, Defendants contend that Gore explicitly rejected the June 22, 2018 version of the Settlement Agreement signed by Blue Bus. After receiving that version, Gore responded on July 2, 2018 by emailing a proposed revised version back to Blue Bus. *See* ECF No. 60-7 ("Revised Settlement Agreement"). In that email, Gore states: "Good Morning Nacho, Revision 3 attached." *Id.* The version attached differs from the June 22, 2018 version signed by Blue Bus in two key respects. First, it imposes additional conditions under which HBC Group "is agreeable to refunding" Blue Bus: (1) HBC Group must sell the buses to a new seller "for an amount of at least $400,000 per bus," (2) Blue Bus is prohibited from "purchas[ing] or plac[ing] an order for new buses from any company or manufacturer without first purchasing these buses," (3) HBC Group "shall make payment" to Blue Bus "upon receipt of clear funds and delivery to the new purchaser," and (4) if HBC Group fails "to sell the buses by Feb 1, 2019," it "will refund" Blue Bus anyway. *Id.* at 2. Second, the

7

signature page of the revised version is *unsigned by either HBC Group or Blue Bus*.  *Id.* at p. 4.[7]

Blue Bus, on the other hand, contends that after Casanova discussed the refund of the Higer deposits, Gore drafted the Settlement Agreement dated June 22, 2018 and sent it to Casanova "by e-mail," and Casanova "signed it and returned it to him right away."  Casanova Decl., ¶¶ 17-18.  But in support, Blue Bus cites to Gore's subsequent July 2, 2018 email, which proposed further revisions to the Settlement Agreement that Blue Bus says the parties already finalized.  *Id.*  Blue Bus does not dispute that no Defendant signed either version.

### c)    Performance

Blue Bus did not receive a refund of the $200,000 deposit under any version of the Settlement Agreement.  Pl. 56.1 Reply, ¶ 53.

### 2.    June 20, 2018 Purchase Orders (the "Gillig Purchase Orders")

### a)    Terms

While settlement discussions were ongoing, Blue Bus continued to deal with Gore and agreed to purchase two substitute "Gillig" brand buses.  Casanova Decl., ¶ 19.  Two purchase orders were issued.  ECF No. 60-6 ("Gillig Purchase Orders").  Both purchase orders list "Stallion Bus" in the heading, and contain a "Stallion Bus & Transit Company" logo.  *Id.*  They are both dated "June 20, 2018,"[8] list "Birdsey" as "Rep," and "Nacho Casanova Hausmann" as "Buyer" on behalf of "Blue Bus Tours LLC."  *Id.*  They also identify the buses' specifications: new/used, year, make, model, body type, cylinders, color, mileage, and VIN number; and price: $200,000 each, with $50,000 deposit due.  *Id.*  The bottom of the purchase orders contain

---

[7] It is unclear if this is the most current version of the Settlement Agreement, or whether Plaintiff ever signed this version.  *See* Gore Dep. at 139:6-7 ("A. I [John Gore] didn't sign it. [Casanova] should have signed it. He didn't sign it.").

[8] Blue Bus contends that the Settlement Agreement "was in place" at the time it decided to purchase the two Gillig buses.  Casanova Decl., ¶ 22.  The record does not support that assertion.  Gore proposed revisions to the agreement on July 2, 2018 (*see* Revised Settlement Agreement), while both purchase orders are dated June 20, 2018.

signature lines for "Buyer Signature" and "Salesman" signature, but *both are unsigned*. *Id.*

b)    *Formation*

The parties again dispute whether the Gillig Purchase Orders formed contracts. Defendants contend that only Stallion Bus Industries LLC issued the purchase orders and that they are unsigned. Pl. 56.1 Reply, ¶¶ 50-51. Blue Bus, in contrast, argues that all Defendants entered into contracts with Blue Bus for the Gillig buses because Gore purportedly negotiated interchangeably on behalf of them. *Id.*

c)    *Performance*

Blue Bus paid $50,000 in deposits for the two Gillig buses, and an additional $150,000 through a financing company, for a total of $200,000. *Id.* ¶ 52. Blue Bus never took possession of either of the two buses. Blue Bus inspected and approved one of the buses, but it required repairs after being damaged in transit from New Jersey to Blue Bus's facility in San Francisco. Gore Dep. at 206:8-207:21. Stallion Bus Industries, LLC paid for the repairs, but Blue Bus refused to take possession. *Id.* at 216:13-217:8 (Gore testifying that he told Blue Bus "I'm sending the [Gillig bus]," and in response, Blue Bus told him "don't send [the Gillig bus]. We're not taking it"). Blue Bus did not receive a refund of the $200,000. Pl. 56.1 Reply, ¶ 53.

**B.    Procedural Background**

Blue Bus filed this action on December 3, 2020. ECF No. 1. It filed the operative Amended Complaint on January 18, 2021, asserting *only* five causes of action: (1) breach of contract (for breach of the Higer Contract and two Gillig Purchase Orders) (Amended Compl., ¶¶ 40-44), (2) common law fraud (*id.* ¶¶ 45-58), (3) rescission of the Higer Contract and Gillig Purchase Orders based on fraudulent inducement (*id.* ¶¶ 59-62), (4) conversion (of money spent on the Higer and Gillig buses) (*id.* ¶¶ 63-68), and (5) breach of contract (for breach of the

Settlement Agreement) (*id.* ¶¶ 69-73).[9]  Defendants filed their operative Answer on September 13, 2021.  ECF No. 22 ("Answer").

The case was initially assigned to District Judge Diane Gujarati and Magistrate Judge Anne Y. Shields.  On January 25, 2022, Judge Shields set an April 15, 2022 discovery cutoff and a May 13, 2022 deadline to initiate dispositive motion practice.  Electronic Order, Jan. 25, 2022.

On May 11, 2022, Plaintiff prematurely filed a motion for summary judgment without seeking a required pre-motion conference, which Judge Gujarati struck the next day.  Electronic Order, May 2, 2022.  Plaintiff then filed a pre-motion letter that cited no authority and included no Rule 56.1 statement, which the Court rejected with leave to renew.  Electronic Order, May 13, 2022.  Finally, on May 25, 2022, Plaintiff filed a compliant pre-motion letter.  ECF No. 28.

The case then was reassigned to the undersigned.  Electronic Order, June 10, 2022.  Defendants responded to the pending pre-motion letter on June 17, 2022.  ECF No. 29.  Judge Gujarati referred Plaintiff's pre-motion request to the undersigned on June 28, 2022.  Electronic Order, June 28, 2022.  After a conference on July 29, 2022, the Court set a settlement conference for September 23, 2022.  ECF No. 30.  These settlement efforts were unsuccessful.  Electronic Order, Sept. 23, 2022; Electronic Order, Oct. 21, 2022.

Discovery did not even come close to finishing by the original April 15, 2022 deadline.  Instead, for several years, endless extensions followed.  On March 8, 2024 the Court attempted to set a final discovery deadline in April 2024.  Electronic Order, Mar. 8, 2024.  Yet still, the parties required further extensions on April 30, 2024, and May 28, 2024, with even further post-deposition discovery to follow.  Electronic Order, May 28, 2024 (describing the parties' endless "moving the goalposts" and "fishing expedition").  Plaintiff sought yet another extension of

---

[9] The operative Complaint—filed nearly five years ago —does *not* include any unjust enrichment claim.

discovery on July 16, 2024, which the Court denied.  Electronic Order, July 16, 2024.

Meanwhile, Plaintiff once again submitted a deficient pre-motion filing on its anticipated motion for summary judgment, requiring it to refile.  ECF No. 51; Electronic Order, July 17, 2024; ECF No. 54; ECF No. 55.  Judge Gujarati then held a pre-motion conference on September 5, 2024, and referred the parties to mediation, which was unsuccessful.  ECF No. 57. On November 16, 2024, Judge Gujarati ordered fully briefed motions for summary judgment by February 19, 2025.  Electronic Order, Nov. 15, 2024.

The parties then filed the cross-motions, scattering briefs, declarations, and exhibits— with little regard for clarity—across six docket entries.  ECF No. 60; ECF No. 61; ECF No. 62; ECF No. 63; ECF No. 64; ECF No. 65.  Plaintiff "moved" for partial summary judgment at ECF No. 60, with supporting materials attached, but it failed to file a mandatory Local Rule 7.1(a)(1) notice of motion.  Defendants moved at ECF No. 62, with supporting materials at ECF No. 62 and ECF No. 64.  Plaintiff's opposition materials are at ECF No. 61, and Defendants at ECF No. 63.  For Plaintiff's motion, the memoranda of law are located as follows: ECF No. 60-17 ("Pl. Mem."), ECF No. 63 ("Defs. Opp."), ECF No. 60-19 ("Pl. Reply").  For Defendants' motion: ECF No. 62-11 ("Defs. Mem."), ECF No. 61-17 ("Pl. Opp."), ECF No. 64 ("Defs. Reply").

On February 20, 2025, Judge Gujarati referred the cross-motions to the undersigned. Electronic Order, Feb. 20, 2025.  Following referral, the undersigned directed the parties to file their missing Federal Rule of Civil Procedure 7.1 corporate disclosure statements and to address the purported bases of diversity jurisdiction in this case—threshold issues that remained unresolved nearly five years in because of the parties deficient filings.  Electronic Order, Feb. 21, 2025; Electronic Order, Mar. 11, 2025.  The Court also ordered tailored supplemental submissions of courtesy copies limited to the materials the parties actually cited in support of the

motions.  Electronic Order, July 9, 2025 ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (citing *Tyson v. Town of Ramapo*, No. 17-CV-4990, 2023 WL 3044623, at *1 (S.D.N.Y. Apr. 21, 2023)).

## II.  LEGAL STANDARD

### A.  Summary Judgment

The court will grant summary judgment where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing a motion for summary judgment, the court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024) (quoting *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)).  When both parties move for summary judgment, "the court evaluates each party's motion on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023) (cleaned up).

Generally, "[t]he moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).  A material fact is one that "might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).  Once the moving party meets that burden, "the nonmoving party must provide sufficient evidence establishing a genuine issue of material fact beyond the mere existence of a scintilla of evidence." *Russo v. Nat'l Grid, U.S.A.*, No. 23-CV-03954, 2024 WL 5186728, at *3 (E.D.N.Y. Dec. 20, 2024) (cleaned up) (quoting *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012)).  Facts are in genuine dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir.

2021)).  "The role of the district court on summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (internal quotations and citation omitted).

## III.  DISCUSSION

It is unclear which claims Blue Bus seeks relief under because it failed to file its mandatory Local Rule 7.1(a)(1) notice of motion.[10]  Thus, the Court must turn to Blue Bus's arguments for guidance.  Blue Bus ostensibly seeks summary judgment *only* on its breach of contract claims (claims one and five).  Blue Bus's opening memorandum argues only in support of breach of contract and an unpleaded "unjust enrichment" claim.[11]  *See generally* Pl. Mem. Blue Bus further argues in its reply brief in support of its conversion claim (claim four).  But that claim was not raised by Blue Bus in its opening memorandum.[12]  *See* Pl. Reply at 5.

As best as the Court can tell,[13] Blue Bus argues that (1) all Defendants are jointly and severally liable for breach of contract because they acted "individually and collectively through John Gore" (Pl. Mem. at 5-6), (2) all Defendants are also liable under a veil-piercing theory (*id.* at 7-9), (3) Defendants breached by failing to deliver the two Higer and two Gillig buses while

---

[10] Blue Bus's failure to file a notice of motion alone warrants denial in full.  *See Perez v. Escobar Constr., Inc.*, No. 20-CV-2010, 2022 WL 19560924, at *1 (S.D.N.Y. Sept. 19, 2022) ("[P]laintiffs' notice of motion . . . fails to 'specify the applicable rules or statutes pursuant to which the motion is brought' as required by Local Civil Rule 7.1(a)(1), and thus would have to be denied for this reason alone.").

[11] Any relief for "unjust enrichment" should be denied.  Blue Bus cannot inject a new unpleaded claim for relief at summary judgment in a case commenced nearly five years ago.  *See Gabriel v. Newrez LLC*, No. 19-CV-6738, 2023 WL 2587506, at *7 (E.D.N.Y. Mar. 21, 2023) (denying summary judgment on unpleaded claim because "it is inappropriate to raise new claims for the first time in submissions at the summary judgment stage'").

[12] Any relief Blue Bus seeks for conversion should be denied for failure to raise conversion in its opening brief.  *See Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, No. 25-CV-5020, 2025 WL 2388287, at *1 (S.D.N.Y. Aug. 18, 2025) ("In general, 'new arguments may not be made in a reply brief.'") (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999)).

[13] The Local Rules require readable papers: 12-point text (10 in footnotes), double-spacing (with narrow exceptions), and *one-inch margins on all sides*.  E.D.N.Y. Loc. Civ. R. 7.1(b); *see also* Judge Gujarati's Individual Practice Rule III.C.2 (requiring one-inch margins).  Plaintiff's papers appear to use approximately half-inch margins—topped off by a dizzying mix of all-caps, bold, underlining, and italics—in violation of those rules.

keeping Blue Bus's deposits (*id.* at 9-10), and (4) Defendants would be "unjustly enriched" if they kept the deposits (*id.* at 10).  Blue Bus also states—in its reply only, without citing any caselaw—that "Defendants admit all necessary elements" to "establish their claim[]" for . . . conversion."  Pl. Reply at 5.

Defendants seek summary judgment on all five claims.  ECF No. 62.  First, Defendants argue that Blue Bus's contract claims (claims one and five) fail as to all Defendants (with the exception of HBC Group) because HBC Group is the only Defendant actually a party to an agreement.  Defs. Mem. at 2-3.  They further that, to the extent Blue Bus's breach theory rests on late delivery (or nondelivery), the claims against HBC Group fail because (1) the June 2018 delivery date was an estimate, (2) Blue Bus informed Gore that it no longer wanted the buses, and (3) the Higer Contract excused supplier delay, which occurred here.  *Id.* at 3-4.  Second, Defendants argue that Blue Bus's conversion claim (claim four) fails as a matter of law because it is duplicative of its contract claims.  *Id.* at 4-5*.*  Finally*,* Defendants argue that Blue Bus's fraud and rescission based on fraudulent inducement claims (claims two and three) fail because there is no evidence of any misrepresentation, only negotiations that fell through.  *Id.* at 5-6.[14]

The Court agrees with Defendants.  This case concerns four agreements: the Higer Contract, the Settlement Agreement, and the Gillig Purchase Orders.  Defendants did not breach them: Blue Bus terminated the Higer Contract after a force-majeure-covered supplier delay, no Settlement Agreement formed, and Blue Bus refused delivery of the two Gillig buses.  The record reflects no fraud: it reflects only disputes regarding contractual formation and

---

[14] Curiously, Defendants largely ignore the Gillig Purchase Orders in their arguments.  At most, Defendants state in conclusory fashion, without pointing to any evidence or caselaw, that "[w]ith respect to the Gillig Buses, Plaintiff cannot show the existence of an enforceable contract."  Defs. Mem. at 4.  Defendants also argue (albeit, to support their position that there was no fraud) that Blue Bus refused to accept the Gillig buses after one was damaged in transport, which also would excuse nonperformance.  *Id.* at 6.

performance.  Finally, there can be no conversion: the record lacks any separately actionable wrong outside contractual disputes.

The Court will first address a lingering preliminary matter—*i.e.*, that Higer USA (as sued separately from HBC Group) is not a proper party.  The Court will then turn to the merits, beginning with the contract-based claims, then the fraud claims, and then the conversion claim.  Ultimately, the Court concludes that there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law on all claims.  Therefore, for the reasons set forth below, the undersigned respectfully recommends that the Court deny Plaintiff's partial motion for summary judgment and grant Defendants' motion for summary judgment in its entirety.

### A.    Preliminary Matters

Before addressing the merits, the Court addresses Higer USA's status as a trade name.  "Higer USA" is the "d/b/a/" for HBC Group (*See* Pl. 56.1 Reply, ¶¶ 4, 8), and thus it has no separate legal existence.  To the extent Blue Bus asserts claims against Higer USA as an independent entity, the Court should dismiss those claims because Higer USA lacks capacity.  *See, e.g.*, *United States ex rel. Gordon v. Shiel Med. Lab'y*, No. 16-CV-1090, 2025 WL 949432, at *8 (E.D.N.Y. Mar. 29, 2025) (dismissing all claims asserted separately against defendant company's d/b/a for lack of personal and subject matter jurisdiction because "under New York law, it is well settled that a trade name has no separate jural existence, and that it can neither sue nor be sued independently of its owner") (cleaned up).  Where applicable, the Court will continue to refer to Higer USA by its proper name, "HBC Group," but those references should only be construed to refer to claims against HBC Group.  With that, the Court turns to the merits.

### B.    Breach of Contract (Claims One and Five)

Blue Bus argues that it is entitled to summary judgment for breach of the Higer Contract, Settlement Agreement, and Gillig Purchase Orders because Defendants failed to deliver the two

Higer and two Gillig buses while keeping Blue Bus's deposits.  Pl. Mem. at 9-10.  Blue Bus asserts that all Defendants are liable for breach under the theory that they are all "parties" to the agreements through Gore's course of dealing and under a veil-piercing theory.[15]  *Id.* at 5-9.

Defendants, on the other hand, argue that they are entitled to summary judgment because the only contract that formed was the Higer Contract, the only Defendant bound by that contract was HBC Group, and Blue Bus terminated it before a breach occurred.  Defs. Mem. at 2-4.

Blue Bus's contract-based claims fail, and Defendants are entitled to summary judgment on them.[16]  First, though the Higer Contract formed at least between HBC Group and Blue Bus, the record reflects no breach.  Instead, Blue Bus itself terminated the Higer Contract before any breach occurred.  Second, the Settlement Agreement never formed.  Finally, assuming that the Gillig Purchase Orders formed contracts, there again was no breach because Blue Bus itself refused performance.  Thus, for the reasons set forth below, the undersigned recommends that the Court deny Blue Bus's motion for summary judgment on its contract-based claims (claims one and five) and grant Defendants' motion for summary judgment on them.

---

[15] Blue Bus devotes considerable attention to veil-piercing arguments, but the Court need not reach them because it concludes that Defendants are entitled to summary judgment on threshold contract formation and breach issues.  *See* Section III.B.2-4, below.  And even if liability were at issue, Blue Bus's theory is unsupported by evidence of fraud or abuse of the corporate form.  *See* Section III.C, below.  Finally, to the extent Blue Bus attempts to lump all Defendants together and pierce between sister companies, that theory fails because the doctrine only seeks to hold a company's owner liable.  *Compare* Pl. Mem. at 8-9 (arguing, incorrectly, that "piercing the corporate veil is warranted here," and therefore, "all of the Defendants need to be held jointly and severally liable"), *with Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 104 (E.D.N.Y. 2025) ("Piercing the corporate veil allows a plaintiff . . . to hold a corporation's *owner* liable for actions taken by the corporation.") (emphasis added).

[16] At various points, the Court assumes that contracts exist rather than resolving threshold formation issues.  The Court does so to address what it views as the clearest dispositive deficiencies in the agreements.  For both the Higer Contract and Gillig Purchase Orders, the Court assumed formation and instead addressed whether there is a genuine dispute as to breach.  By contrast, the Settlement Agreement's formation clearly fails (no offer and acceptance, and ongoing revisions), so the Court did not assume formation.  To be sure, there are major formation issues with the Higer Contract and Gillig Purchase Orders, especially concerning Blue Bus's position that every Defendant is bound by them.  A breach of contract action under New York law "may only be maintained" against a party to that contract.  *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023).  This means, with limited exceptions, that "a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract."  *Id.*; *see also MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396-97 (S.D.N.Y. 2009) (collecting cases).  Here, only one Defendant—HBC Group—actually signed anything.

1.    Applicable Law

The agreements are governed by New York law.[17]  Under New York law, breach of contract requires "(1) the existence of an agreement, (2) adequate performance of the contract by the [party], (3) breach of contract by the [other party], and (4) damages." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Formation requires "offer, acceptance, consideration, mutual assent, and intent to be bound.'" *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 495 (S.D.N.Y. 2023) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). Acceptance "must comply with the terms of the offer and be clear, unambiguous and unequivocal.'" *Pierce v. Better Holdco, Inc.*, No. 22-CV-4748, 2023 WL 6386920, at *12 (S.D.N.Y. Sept. 29, 2023).  If instead "the offeree responds by conditioning acceptance on new or modified terms, that response constitutes both a rejection and a counteroffer which extinguishes the original offer.'" *Haller v. Usman*, No. 24-CV-977, 2025 WL 605572, at *7 (S.D.N.Y. Feb. 25, 2025).

2.    Breach of the Higer Contract (Claim One)

Both sides agree that the Higer Contract formed at least between HBC Group and Blue Bus.  Pl. 56.1 Reply, ¶ 28.  The Higer Contract designates only HBC Group as the "Seller," and only Blue Bus Tours LLC as the "Buyer."  Higer Contract, at p. 1.  It is only signed by Birdsey for HBC Group, and only Casanova for Blue Bus.  *Id.* at p. 6-7.

---

[17] The Higer Contract (Higer Contract, § 13) and both versions of the Settlement Agreement (Settlement Agreement at p. 2; Revised Settlement Agreement at p. 2) specify that New York law governs.  The Gillig Purchase Orders contain no express choice-of-law provision, but the parties briefed the Gillig Purchase Orders under New York law without objection.  Given the parties' course of dealing, New York law bears an appropriate relation to the Gillig Purchase Orders.  *See* N.Y. UCC § 1-301(b) (applying law of the jurisdiction with "an appropriate relation" to the transaction where no explicit choice is made).

Though HBC Group and Blue Bus are the only parties to the Higer Contract, it remains disputed whether it bound all Defendants. Pl. 56.1 Reply, ¶ 14. Gore, for instance, "used emails from U.S. Fleet Services Corp., [HBC Group], and Stallion Bus Industries LLC" in connection with the Higer Contract and directed Blue Bus to wire its $200,000 deposit to Dealer Corp. (not HBC Group). *Id.* ¶¶ 15, 21.

Still, even assuming that the Higer Contract bound all Defendants, Blue Bus's claim fails because it terminated the Higer Contract before any breach occurred. The Higer Contract provides—as a material term—that delivery shall be made "estimated June 2018." Higer Contract, §§ 3.1-32; *see also id.* at "Time Table" (initially projecting delivery by "June 2018 Week 5- to July Week 1"). The Higer Contract, however, also contains a force majeure clause that explicitly discharges liability "for failure or delay in performing," where "such failure or delay is occasioned by . . . *supplier delays.*" *Id.* § 10 (emphasis added).

A force majeure clause "relieve[s] a party from its contractual duties when its performance has been prevented by a force beyond its control or when the purpose of the contract has been frustrated." *Nextera Energy Mktg., LLC, v. Macquarie Energy LLC*, No. 22-CV-1345, 2025 WL 2613756, at *6 (S.D.N.Y. Sept. 10, 2025). Under New York law, a force majeure clause creates excusable nonperformance where "the force majeure clause specifically includes the event that actually prevents a party's performance.'" *Id.* Thus, a party is entitled to excusable nonperformance where the force majeure clause includes the event that is "the proximate cause of nonperformance . . . ." *Kosher Ski Tours Inc. v. Okemo LLC*, No. 20-CV-9815, 2023 WL 8720273, at *5 (S.D.N.Y. Dec. 18, 2023).

Here, the Higer Contract's force majeure clause "specifically includes," *Nextera*, 2025 WL 2613756, at *6, "supplier delay" as an event that discharges Defendants' liability "for

18

"failure or delay in performing."  Higer Contract, § 10.  Moreover, supplier delay was, in fact, "the proximate cause," *Kosher Ski Tours Inc.*, 2023 WL 8720273, at *5, of Defendants' inability to timely perform: it is undisputed that, in the months leading up to the estimated June 2018 Higer bus delivery, Gore informed Blue Bus that HBC Group would be unable to deliver on time because of a supplier delay.  Gore Dep. at 107:18-108:1.  The supplier delay, according to Gore's unrebutted testimony, was caused by a third-party supplier of the buses' fuel tanks (*id.* at 108:2-15), and Blue Bus knew of this supplier delay.  Casanova Dep. at 110:7-12; 22-24 ("Q. Was there a supplier delay in this case? A. We were -- on several conversations with Mr. Gore, we were informed that there were some delays on the supply side"; "Q. . . . those delays, as you described them, were supplier delays? A. Yes."); *id.* at 111:21-112:2. ("Q. . . . the delays that arose were, you learned were from a supplier, correct? A. Yes.").

This supplier delay, as well as Blue Bus's own decision to terminate the Higer Contract, forecloses its breach claim.  The Higer Contract contains no express provision governing termination, so the Court looks to New York law to fill the gap.  *See, e.g.*, *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 90-91 (2d Cir. 2015) (interpreting ambiguous termination rights under New York's Uniform Commercial Code).  Under New York law, "termination" occurs "when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach."  N.Y. UCC § 2-106(3).  Such a termination discharges "all obligations which are still executory," and "only rights based on prior breach survive."  *Id.*  In a sale-of-goods contract, the buyer (here, Blue Bus) may put an end to the contract "by written notification" when the buyer "receives notification of a material or indefinite delay."  *Id.* § 2-616(1)(a).

Here, Blue Bus "asked Mr. Gore to return the $200,000 in deposits that Blue Bus had paid" under the Higer Contract after Defendants informed Blue Bus about the force-majeure-covered-delay.  Casanova Decl., ¶ 16.  Blue Bus's termination became effective when the parties exchanged written drafts of the Settlement Agreement memorializing Blue Bus's intent to cancel the Higer Contract.  *See* Settlement Agreement at p. 1 (specifying Blue Bus's intent to "cancel the [Higer Contract] and receive a refund of its deposit"); Revised Settlement Agreement at p. 1 (exchanging further revisions via email).[18]  At that time, no breach had occurred, and Blue Bus's termination discharged Defendants' obligation to deliver the Higer Buses.

In sum, Blue Bus's Higer Contract breach claim fails, and Defendants are entitled to summary judgment, because there is no genuine issue of material fact that (1) the force majeure clause (Higer Contract, § 10) unambiguously excused Defendants' inability to timely perform because of the supplier delay, (2) upon notification of the supplier delay, Blue Bus put an end to (*i.e.*, terminated) the Higer Contract (N.Y. UCC §§ 2-106(3), 2-616(1)(a)), and (3) by terminating, Blue Bus discharged Defendants' executory obligations under the agreement before any breach occurred (*id.* §§ 2-106(3), 2-616(1)(a)).  Accordingly, the undersigned recommends that the Court deny Plaintiff's motion as to the Higer Contract and grant Defendants' motion.

### 3.    Breach of the Settlement Agreement (Claim Five)

The parties dispute whether the Settlement Agreement ever formed.  Pl. 56.1 Reply, ¶¶ 44-45.  Here, the undisputed record shows three things: (1) Blue Bus (but not Defendants) signed a Settlement Agreement version dated June 22, 2018 (Settlement Agreement), (2) Gore

---

[18] Blue Bus may object that (1) it did not itself reduce its cancellation into writing (rather, it claims Gore did), and (2) the Court later finds that the settlement agreement never formed (*see* Section III.B.3), so termination was not effective.  Both objections are inapposite.  All New York law requires is "written notification" of the buyer's intent to put an end to the contract in response to "notification of a material" delay.  N.Y. UCC § 2-616(1)(a).  That requirement is satisfied here by the parties' exchange of emails and drafts memorializing Blue Bus's intent to cancel, regardless of who initially drafted it.

later sent on July 2, 2018 a "Revision 3 version (unsigned by either party) that included additional terms (Revised Settlement Agreement), and (3) there is no evidence of an email from Gore prior to June 22, 2018 in which he transmitted the prior version Blue Bus signed.

Blue Bus nevertheless contends that the Settlement Agreement formed because Gore sent the June 22 draft to Blue Bus (offer), Blue Bus signed and returned it to Gore (acceptance), and Gore never disavowed it, even though he never signed it. Casanova Decl., ¶¶ 17-20. But the record does not support that sequence. The only communication from Gore that Blue Bus cites to is the *subsequent* July 2, 2018 email,[19] which attached a materially revised draft. That version was unsigned by either party and added new material terms (counteroffer, not acceptance). *See Haller*, 2025 WL 605572, at *7. And there is no evidence that either side signed or otherwise assented to this later "Revision 3" version. *See id.* (finding that returning a draft with altered terms, even where the other side does not object, constitutes a counteroffer that extinguishes the original offer and does not create a contract).

Thus, there is no genuine issue of material fact that no settlement contract formed between the parties, and accordingly, there can be no breach.[20] Because the Settlement Agreement never formed, the undersigned recommends that the Court deny Plaintiff's motion as to the Settlement Agreement (claim five) and grant Defendants' motion.

---

[19] In its 56.1 Statement, Blue Bus cites to the June 22, 2018 version as the one that Gore "drafted" and "tendered" to Blue Bus, and which Casanova allegedly returned "signed." Pl. 56.1 Reply, ¶ 44. But in its memorandum, Blue Bus inconsistently points to Gore's later July 2, 2018 email and the attached "Revision 3" draft as the version Gore "drafted and tendered." Pl. Mem. at 3-4.

[20] The Court recognizes that this may be viewed as a harsh result. Blue Bus spent $200,000 under the Higer Contract, sought to cancel when supplier delay delayed timely performance, and the parties even reduced the cancellation into draft writing. But because the Settlement Agreement never formed, Blue Bus cannot enforce it. And because its election to terminate the Higer Contract discharged Defendants' executory obligations before any breach occurred, no contractual remedy lies under that agreement either. The only plausible route to recovery might have been a quasi-contractual unjust enrichment claim, which Blue Bus alludes to in its briefing (Pl. Mem. at 10) but again, *never actually pleaded* in its Complaint filed nearly five years ago.

4.    Breach of the Gillig Purchase Orders (Claim One)

The parties once again dispute whether the Gillig Purchase Orders formed contracts. Even assuming contracts existed, it is undisputed that Blue Bus repudiated them by refusing delivery. After one Gillig bus was damaged in transit (and repaired), Gore attempted to deliver it. Gore Dep. at 216:13-217:8. But according to Gore's unrebutted testimony, Blue Bus told him "don't send [the Gillig bus]. We're not taking it," and refused to accept both of them *Id.* That refusal discharged Defendants' duty to deliver. *See Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532 (2012) ("Where one party to a contract repudiates it and refuses to perform, the other party by reason of such repudiation is excused from further performance, or the ceremony of a futile tender."). Accordingly, Blue Bus's claim fails as a matter of law, and Defendants are entitled to summary judgment.

5.    Conclusion

In sum, the parties dispute whether contracts formed and who was bound, including whether Gore may be held personally liable under a veil-piercing theory. But the Court need not reach each of those questions. On the undisputed record, even assuming contracts existed with all Defendants under the Higer Contract and Gillig Purchase Orders (as Blue Bus claims), there is no genuine dispute that Defendants did not breach them: Blue Bus terminated the Higer Contract after being notified of a force-majeure-covered supplier delay, and it refused delivery of the Gillig buses. For the Settlement Agreement, the more obvious fatal deficiency was with formation: there was no offer and acceptance, the only signed version was by Blue Bus, and revisions were ongoing. On this record, no reasonable jury could find for Blue Bus. The undersigned thus recommends that the Court deny Blue Bus summary judgment on its breach of contract claims (claims one and five) and grant Defendants summary judgment on those claims.

### C.      Fraud and Fraudulent Inducement (Claims Two and Three)

Defendants seek summary judgment on Blue Bus's fraud (claim two) and fraudulent inducement and rescission (claim three) claims on the ground that no Defendant made any misrepresentation.  Defs. Mem. at 5-6.  Blue Bus responds that Defendants misrepresented their ability and intent to deliver the Higer buses and later misrepresented that they would cancel and refund the Higer Contract deposits to induce the Gillig purchases.  Pl. Opp. at 12-15.  That theory is both legally incorrect and unsupported by the record.  Both claims fail because the record lacks affirmative evidence of any misrepresentation made outside the agreements' ambit.

Under New York law, fraud requires "clear and convincing evidence" that (1) "the defendant made a material misrepresentation of fact," (2) "knowing of its falsity," (3) "with the intent to induce reliance," and (4) "that the plaintiff justifiably relied on that misrepresentation to her detriment."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014).  A fraud claim fails where it "arises out of the same facts" as an alleged breach of contract, "with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties."  *Clarke v. TRIGO U.S., Inc.*, No. 22-CV-1917, 2023 WL 6806074, at *3 (S.D.N.Y. Oct. 16, 2023) (quoting *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)).  "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim."  *Id.* (quoting *Telecom Int'l*, 280 F.3d at 196).

Likewise, with respect to fraudulent inducement, "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."  *Gramercy Holdings I, LLC v. Matec S.R.L.*, No. 20-

CV-3937, 2023 WL 5917624, at *19 (S.D.N.Y. Sept. 11, 2023) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007)).  "To survive summary judgment," a fraudulent inducement claim "must involve a false statement collateral to the contract that asserts a present fact rather than promising future performance."  *Id.* at *20.

Here, Blue Bus points to four purported "frauds": (1) Defendants promised to deliver the Higer buses "with full knowledge that they would not be able to deliver them by the June 2018 date" (Pl. Opp. at 13), (2) Defendants "committed an additional fraud" by "promising to return Plaintiff's $200,000 in deposit monies" (*id.* at 14), (3) Defendants drafted the Settlement Agreement "in an effort to have Plaintiff rely on its contents" (*id.*), and (4) the "final fraud was that two Gillig buses would be delivered" (*id.*).

These "frauds" are unsupported by the record.  But even if they were, each concern Defendants' future performance under the agreements rather than any material present fact collateral to performance.  *See, e.g.*, *Gramercy*, 2023 WL 5917624, at *19-25 (granting defendant summary judgment on fraudulent inducement claims where record lacked evidence of present-fact-misrepresentations collateral to the agreement at issue); *Wiener v. Fireman's Fund Ins. Co.*, No. 14-CV-3699, 2015 WL 13742025, at *5-6 (E.D.N.Y. June 15, 2015) (finding that fraud claims failed as a matter of law where the "allegedly false communications, reports, and promises" concerned "nonperformance of the contract itself" without "representations collateral or extraneous to the contract").  The Court will address each assertion in turn.

First, Blue Bus cites to the Higer Contract and portions of Gore's deposition to support that Defendants "had full knowledge" that they would not perform.  Pl. Opp. at 13.  Neither source supports that claim.  And in any case, evidence concerning Defendants' intent to perform (or lack thereof) do not involve factual misrepresentations collateral to performance.

Second, Blue Bus cites to the Settlement Agreement, the July 2 email, and Gore's deposition to support its claim that Defendants fraudulently "promis[ed] to return" Blue Bus's deposit. *Id.* at 14. But on the very same page of Gore's testimony, Gore states that he did not recall definitively making such a promise. Gore Dep. 171:8-9 ("Q. . . . You had promised to refund $200,000. Correct? A. I don't remember promising that."). Even crediting Blue Bus's assertion, there is no evidence that Gore's promise misrepresented a collateral present fact.

Third, Blue Bus again cites to the Settlement Agreement, the July 2 email, and Gore's deposition testimony to assert that the Settlement Agreement draft was created "to have Plaintiff rely on its contents." Pl. Opp. at 14. Those materials do not support that inference. And in any case, they fail to identify any factual misrepresentation collateral to the dealings.

Finally, Blue Bus cites no evidence for its assertion that Defendants committed fraud by stating that the "Gillig buses would be delivered." *Id.* The record instead shows that after one Gillig bus required repairs following an in-transit accident, Blue Bus refused delivery. Gore Dep. at 216:13-217:8. That is a performance dispute, not fraud.

In sum, even crediting Blue Bus's (unsupported) characterization of the evidence, Blue Bus's theory of fraud reduces to allegations that Defendants "never intended to perform the precise promises spelled out" in the agreements. *Clarke*, 2023 WL 6806074, at *3. On this record, no reasonable jury could find for Blue Bus. Because there is no evidence that Defendants made any misrepresentations collateral to the dealings, there is no genuine issue of material fact, and these claims fail as a matter of law. *See, e.g.*, *Gramercy*, 2023 WL 5917624, at *19-25; *Wiener*, 2015 WL 13742025, at *5-6. The Court should therefore grant Defendants summary judgment on Blue Bus's fraud and fraudulent inducement claims (claims two and three).[21]

---

[21] Blue Bus may object that its fraud and fraudulent inducement claims cannot be dismissed as duplicative

### D.    Conversion (Claim Four)

Defendants seek summary judgment on Blue Bus's conversion claim (claim four) arguing that, even assuming Blue Bus could demonstrate conversion, the claim is duplicative of a breach claim.  Defs. Mem. at 4-5.  Blue Bus failed to oppose Defendants' conversion argument.[22]  "A party abandons a claim in the context of a summary judgment motion when she does not respond to arguments concerning that claim." *Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.*, 746 F. Supp. 3d 69, 82 (E.D.N.Y. 2024).  The Court will address the merits anyway for completeness.

Under New York law, conversion is the "unauthorized assumption and exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Elara Foodservice Disposavles LLC v. Heze Ju Xin Yuan Food Co.*, No. 21-CV-04523, 2023 WL 2710880, at *4 (E.D.N.Y. Mar. 30, 2023) (citation omitted).  "As with fraudulent inducement, conversion claims that merely duplicate breach of contract claims are not actionable in New York." *Id.*  Thus, "for a conversion claim to succeed in the context of a dispute regarding contract, the breach of contract must result in some wrong that is separately actionable." *LG Cap. Funding, LLC v. 5Barz Int'l, Inc.*, 307 F. Supp. 3d 84, 94 (E.D.N.Y. 2018) (cleaned up).  Where a plaintiff fails to "come forward with evidence establishing" an "independently actionable wrong," the claim is "insufficient to survive even a motion to dismiss" and subject to dismissal on summary judgment.  *See id.*

Blue Bus's conversion theory appears to rest entirely on Defendants possessing the $400,000 deposits under the Higer Contract and Gillig Purchase Orders despite nondelivery.

---

given that the Court recommends dismissal of its contract claims.  But the Court's reasoning does not rest on the claims being duplicative.  Rather, the claims fail because there is no evidence of a factual misrepresentation collateral to the agreements.  *See Gramercy*, 2023 WL 5917624, at *20.  Absent such evidence, the claims fail.

[22] As discussed in note 12, above, Blue Bus raises conversion in support of its motion for summary judgment.  *See* Pl. Reply at 5.  But raising that claim in its reply does not oppose Defendants' motion on that claim.

*See* Pl. Reply at 5.  That possession arises under the agreements—*i.e.*, Defendants received the deposits under the agreements, a performance dispute ensued, Defendants did not deliver based on the dispute, and Defendants retained the deposits.  Therefore, because Blue Bus's alleged injury is based on the same facts that underly the agreements, and Blue Bus identifies no "independently actionable wrong," *LG Cap.*, 307 F. Supp. 3d at 94, the claim fails.  The Court should grant Defendants summary judgment on Blue Bus's conversion claim (claim four).[23]

## IV.        CONCLUSION

For the reasons set forth in this Report and Recommendation, there are no genuine disputes of material fact, and Defendants are entitled to judgment as a matter of law on each claim.  First, the contract claims fail.  Assuming that the Higer Contract and Gillig Purchase Orders formed contracts, Blue Bus terminated the Higer Contract after a force-majeure-covered delay and refused delivery of the Gillig buses, discharging any duty to perform.  The Settlement Agreement, meanwhile, never formed: the earlier version was signed only by Blue Bus, and the later unsigned "Revision 3" proposed new material terms.  The fraud and conversion claims likewise fail because the record contains no evidence of any misrepresentation collateral to the agreements, and no independently actionable wrong beyond the alleged breaches.  Finally, Blue Bus never pleaded an unjust enrichment claim in its near-five-year-old Complaint, and it cannot seek summary judgment on this unpleaded claim.[24]

---

[23] Blue Bus may object that its conversion claim cannot be dismissed as duplicative because the Court recommends dismissal of its contract claims.  That objection misses the point.  The defect is not merely the claim is duplicative, but that Blue Bus has identified no "independently actionable wrong" outside the contracts.  *See LG Cap.*, 307 F. Supp. 3d at 94.  Absent such evidence, conversion fails as a matter of law regardless of whether the contract claims survive.  *See id.*

[24] The Court should deny any motion to amend to add an unjust enrichment claim now as unduly prejudicial given that this case has been pending for nearly five years and discovery closed long ago.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of leave to amend where the motion was filed after "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint").

The undersigned respectfully recommends that the Court issue an order denying Plaintiff's partial motion for summary judgment (ECF No. 60) and granting Defendants' motion for summary judgment (ECF No. 62) in its entirety.

## V.     OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
       October 3, 2025

SO ORDERED:

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge